Snyder. And we'll begin with you Mr. Joshi. Thank you, Your Honor. May it please the court, Sophan Joshi, on behalf of the defendant, Kelton Snyder. In this appeal we're challenging Snyder's conviction for conspiring to kill a potential witness to a gas station robbery, as well as Snyder's consecutive life sentence that he received for brandishing a shotgun during that robbery. I'll turn first to the witness tampering conviction. Under the federal statute, the government had to prove that had Paige Mars, the victim, actually the getaway driver for the robbery, had she lived, and had she turned in Snyder for the robbery, that there is a reasonable likelihood that she would have spoken to a federal officer and not merely a state or local officer. So Mr. Joshi, this requires us to parse Fowler against the United States, obviously. There were some remarks in Justice Scalia's concurring in the judgment opinion saying that the court's standard will serve only to confuse judges and juries, and perhaps it turns out he was right. But here we are. So in a world where you don't have to prove state of mind, the statute itself says that's not necessary, why wouldn't one say, given the nature of this office, that there was at least a reasonable likelihood that a communication would have been made to the FBI agent who was working in the Decatur police office, or one of the two. There's the one who's the actual FBI agent, the other guy is kind of working with them. So it's a pretty low standard. I mean, the court thinks it's picking the middle standard of the three that it looks at, but you don't have to know it's a federal agent, right? That's true. You don't have to know, and I believe what Fowler says is that if you do know, then that's sufficient. Oh, sure. Yeah, I mean, those are the easy cases. But the vast majority of cases are like this case where, truth be told, does the public actually have the faintest idea where the federal and the state government lines get drawn? Probably not. Probably not. And I think that's why Fowler said that the line is to be drawn at reasonable likelihood and that you have to look really at, as a practical matter, that was a phrase used in Fowler, is this a state or local investigation or not? Fowler cited, I think, marijuana arrest, and as an example of something that would be a traditional state or local one, because he said something like less than 1% of all marijuana arrests are handled federally. And we have basically the same statistic here in this district, I'll remind you, that less than 1% of these kinds of robberies, and perhaps even much less than that, are federally investigated. But I also don't want to lose sight of the fact that that's just one piece of Fowler. As cryptic as Fowler may be, and I know this court hasn't had a chance to apply it yet, but other circuits have, and I really do urge the panel to look at Tyler and Chaffin and the other cases we cite, pages 28 to 29 of our brief. If Fowler stands for anything, it's that the mere fact that there's an underlying federal offense isn't enough. There has to be some additional evidence. Well, I agree with that for sure, but there are two things I'll comment. One of them is, I get the feeling that Fowler is setting a pretty liberal standard when you look right toward the end of the opinion, and you just have to show that the likelihood was more than remote outlandish or simply hypothetical. That doesn't strike me as too much of a standard. And here we have something more than the fact that this convenience store robbery happens to overlap with the Hobbs Act. Again, I'm sure people don't know that, but it does. It overlaps with the Hobbs Act. Because we know that there's an FBI agent right there in the same office, and indeed they were thinking of getting that agent's help for the tattoos. I mean, we have a little more evidence than that. So two things in response to that. One, I don't think we have that. I think there's a difference between, and remember, what the statute says and what Fowler says is it has to be actual communication from the witness to the officer. Not just agent involvement. Exactly. Not just agent involvement. Not just technical help, right? I would imagine state officers get FBI help for all sorts of things. Maybe DNA databases, fingerprints, gun serial numbers. Maybe when they pull over people for driver's licenses, they probably ping some database, ex-offender databases. So mere technical assistance can't be enough. I would say you have to have something that shows a federal witness interfacing role or a witness interrogation role, something like that. And that's really what we have in all the other out-of-circuit cases. We have some evidence of that kind of role. No, I appreciate that, but look at this weird world we're creating. This unfortunate potential witness got killed so quickly in the nature of things that we don't really have any idea whether had she gone to the police station, whether she would have sat down and talked to the federal officer as well or not. So it sounds like if you're going to kill a witness, do it really quickly, and that way you can avoid federal prosecution and just be left with the state. So I disagree with the premise there, Your Honor, respectfully. What we have, remember, what Fowler says is consider if the witness isn't killed and then goes and turns in to defend it. Well, that's right. That's the counterfactual. And so as a sort of a fortiori case, here the witness was killed very quickly, and then we have Brandon Burwell, a witness who actually lived and actually turned in Snyder for the robbery and never spoke to Stalitz or any of the federal officers involved in the case. And so in many ways, this is a much easier case than the sort of pure Fowler-style hypothetic. Do you think the federal element is constitutionally required? I don't think it matters for the case, but personally, I don't believe it's constitutionally required. I think the federal offense element is more than sufficient, I think, under current Commerce Clause jurisprudence to satisfy it. I think it's an additional element that Fowler rightly said was there to preserve the federal-state balance in prosecutions and preserve the federal interest in federal matters. Can I ask you about the sentencing problem here? Yes, of course. In particular, the district judge's statements to the effect, this is the appropriate sentence. He made very clear he did not feel bound by the guidelines. And I understand that whether Ms. Mars was likely to talk to a federal or local officer is important for the 1512 conviction. But we have a jury, if you're the district judge here, you're looking at a young man whom a jury has just found guilty of conspiring to murder Ms. Mars. She was murdered. All that's beyond a reasonable doubt here. It's hard for me to see why that is an unreasonable sentence. It's an unreasonable sentence, Your Honor, for a few reasons. First, remember, assuming we went on the 1512 conviction, so... That's the assumption for this question. Right. I'll just remind the Court that, as the government points out in its brief on page 56, nearly 80 percent of murder convictions in the federal system don't get life sentences. Does that mean a life sentence is unreasonable? It may not, but this Court has said... It may or may not. Could be right, Your Honor. But I will respectfully say that this Court in Polk and Presley have said that for a lengthy sentence to be substantively reasonable, you have to consider the fact that young violent criminals tend to age out. And the judge did not consider that fact. And so if 3553A's directive to impose a sentence no more than necessary to achieve the aims of sentencing is to be taken seriously, I think the judge... But you wouldn't have life sentences. That's the problem, because I think that's where that logic takes you. And maybe some of us from a policy point of view might think that was all right. But this was a very brutal murder. I mean, surely the judge was entitled to take into account the actual facts of what happened. Perhaps, Your Honor, but I will remind you that the facts that were introduced both at trial and at sentencing showed that it was Higgins' vote who carried out the murder. There was no evidence that Snyder suggested it was... I think the judge focused on this execution style or something like that. There's no evidence that Snyder directed that. In fact, the evidence that he had before him was that they met on Sunday night and then Higgins' vote statement that Snyder just wanted to scare her, and it was Higgins' vote's idea to really go farther than that. And so I appreciate all this. I'm not trying to downplay the seriousness of this crime at all. But, again, I will merely point out that in terms of a sentencing disparity, both for even if one considers the killing and just looking at the crime on which the life sentence was given, a 924C, it really is out there... The law enforcement system tends to react pretty badly to murders of witnesses. I appreciate that well, Your Honor. That plays into this case. I appreciate that, but I still think that doesn't lift the requirement on district judges to, as this Court has said, enunciate persuasive reasons for sentences that are far, far outside the guidelines. And in this case, as I said, he didn't consider the rehabilitative potential. He called it a flight of fancy, and that was a little bit troubling because to just wave off medication or therapy as rehabilitative was kind of at odds with what the records showed. The district judge thought he's a very impulsively violent guy. He stabbed his friend. He punched the girlfriend, something like that. All of that information came in at trial from Snyder's post-arrest interview. And in that interview, he revealed that, yes, he stabbed his friend and punched that woman as a result of unmedicated mental illness, the schizoaffective disorder. The PSR, paragraphs 100 to 105, detail this. It's got his medical history. It says he has... He's obviously a mess. We can see that. Of course. And so my only point is that I don't think it was justified to say that he could never be rehabilitated because he's 23 now and impulsively violent, unless the Court has questions I'd like to reserve. That would be fine. Mr. Boehm. Good morning, Your Honors. Jason Boehm on behalf of the United States Counsel. So, Mr. Boehm, would you mind starting with the Fowler point? Because I'm very disturbed at the effort to try to stretch what Fowler says this statute covers over to these facts, when I try to take this, you know, try to pretend this witness wasn't killed and come up with anything that suggests that a federal law enforcement interest would have been involved that doesn't look like one of the rejected options that the Supreme Court laid out. Your Honor, I think, first, this isn't just a robbery of a convenience store. It's also... Well, but it is. I mean, the truth is it's one of the many, many areas in which federal law and state law both address the same conduct. And the Hobbs Act is a particular supplier of such fact scenarios, right? Because you've got robberies that affect interstate commerce and you've got other kinds of things. So it's a $700 robbery, plus whatever the liquor was worth, and it was being handled by the state officials. Plus a felon in possession, plus a 924C. But the witness was not doing anything about the felon in possession. The witness wasn't doing anything about the rest of the federal charges. The killing a person with intent to prevent that person from communicating, the only thing that witness could have communicated was something about the robbery. She was the getaway driver. She would have seen that they were armed with the firearm, Your Honor. She would have been a witness to what he pled guilty to, which was three offenses, the robbery... Yes, and this is the theory that Fowler rejected. The fact that it could have been prosecuted federally is not enough. Let me throw out, just by comparison, another U.S. Attorney's Office in this district announced a policy. We're going to take robberies of pharmacies federal, okay, because of people going in to get opiates and methamphetamine supplies and so on. Where you've got that kind of a policy and you then had what might look like a state law robbery of a pharmacy, then it doesn't look so unlikely that the case would go federal. Here, we just don't seem to have any of that. I think we do, Your Honor, and that's why I keep coming back to the fact that it was the firearms and Mr. Snyder, who he was, that sparked federal interest. But what Judge Hamilton is referring to is this language on page 675 in Fowler, where the court's just kind of logically thinking, what could this mean? They're looking at dictionary and they say, the victim's communication with the federal law enforcement officer could be one of three things. Intended, they reject that right away. Possible, they reject that. Or likely, and they then go on to say, we're adopting likely, and they explain what they mean by a reasonable likelihood. But I think your theory is just that it's possible. Sure, maybe she knew a gun and maybe she was sophisticated enough to think that she might want to communicate with the federal law enforcement officer about their possession of a gun, but Fowler's a narrowing construction on this statute. Absolutely, and I think the Fourth Circuit in Smith is instructive on that point of the definition of likelihood. They say that's not what is ultimately adopted was not the dictionary definition of likelihood because the Supreme Court, in the same opinion, said this doesn't need to be proven as more likely than not. It simply needs to be more than remote, outlandish, or simply hypothetical. Why isn't yours hypothetical though? I mean, outlandish, I don't know what that means, men from Mars land on the lawn or something, but hypothetical. This potential witness, had she not been killed, might have done what Burwell did, but the analogy is made to Burwell. Burwell didn't know he had no intention to do anything. The chronology of events here, I think, is important. Before the murder and the robbery are linked together, Decatur goes to the FBI and says, will you help us identify the robbers? We have this video, it has the tattoo, help us identify. That's before they knew the two are connected. So the FBI is involved right at the outset of the investigation. Let's suppose that she lives. Brandon Burwell, I think, is coming into the police to talk, regardless of if she's murdered or not. He wants to get Kelton Snyder away from his wife. He knows that he was involved in this robbery. He's going to come forward. As they work up suspects, I think Paige Mars is going to be the absolute weakest link in this chain of going to identify. I think it is reasonable to assume that the FBI involved in identifying the robbers would have communicated with her. But you're relying a little bit on the fact that it's a Hobbs Act violation. But the statistics that Mr. Joshi presents to us in the briefs, certainly accord with my offhand sense of it, there are vast numbers of robberies that are committed of convenience stores and other commercial establishments in Illinois and in other states that are handled by the state authorities. They don't all turn into Hobbs Act prosecutions. And I think there's two things with regard to the statistics. This is a sufficiency of the evidence challenge. Statistics were never presented to the jury. And as they admit in their briefs, things that aren't submitted to the jury aren't relevant to a sufficiency of the evidence argument. And I think the statistics also overlook the frequency with which 924C and 922G offenses are brought in federal court. I also think the standard of sufficiency of the evidence challenge, and generally that is a high bar where all evidence is viewed in the light most favorable to the government. But certainly though, we need to have the right legal understanding of what the statute covers. That's a question of law for us. And once we figure out what is a reasonable likelihood. And I think the Fourth Circuit standard is the one I would urge this court to adopt, which is you can have the inference. It doesn't mean that alone meets the day. An inference that the underlying crimes are federal, plus additional appropriate evidence. And the Fourth Circuit is clear that it's a case by case. So what's your best additional appropriate evidence if we were here in the Fourth Circuit? I think there's communication. There's clear testimony that there's a collaborative effort between Decatur police and the FBI, especially when it comes to violent crimes, robberies. There was communications, again, very early. So is every case that the Decatur police department handled something that could fall under this statute because of this close collaboration with Hill and Stalitz? Absolutely not. The regular robbery of something that doesn't affect interstate commerce would not. Yeah, but how many things are that? That's somebody's home, you know, as we know from Jones. It doesn't leave much. I think, no, it doesn't. But again, in this case, they went to the FBI before they knew that she... But again, it's not FBI involvement. It's FBI communication with the witness, right? And that, Your Honor, that's important. Counsel said that Brandon Burwell never communicated with the feds. That's just not true. He testified that he communicated thoroughly with both Agent Stalitz and myself. Every factual witness on the stand... When? I'm sorry? When did he have those communications? He communicated after... After Mars was murdered? Absolutely. Okay, at that point... He communicated with everyone. At that point, you guys have taken the case federal. That's really hindsight at this point. The question has to do... I take your point in terms of rebuttal of the defense, but could you address what you think of the Chafin and Tyler opinions dealing with this after Fowler? I think there was a problem with the jury instructions. I believe that was in Tyler. I don't believe there's any suggestion that there's a problem with the jury instructions in this case. No, there's not. But in terms of the standard, you know, in both cases, you've got additional facts that just make it considerably more likely that the relevant agents or that the information would be turned over to the federal agents. Well, in Chafin, Your Honor, I believe that there it was a sheriff who was misusing the... Nobody was killing anybody there. It was bribery. And I don't believe that there... And I think they said the evidence in that case showed that there would not have been... It proved that there would not have been any communication between the state and the feds. Here, I think the opposite was proven. The officers, both Cody Moore and Detective Daly, talked about the communications they have with federal agents. It's clear that the witnesses had communication with the federal agents. I understand this is a... Fowler is difficult to... Could you address the sentencing issue, Mr. Bohm? Sure. If we were to disagree with you on the 1512 conviction, a possibility that was obviously discussed at sentencing in this case. Could you discuss what you think we should do and why? I think the sentencing was done in light of the fact that this area of the law is not well settled and this court hasn't spoken on how to apply Fowler. So we urge the district court to consider the fact that the 1512 conviction isn't there and ask the court to come to what it thought was the reasonable and appropriate sentence. On the 924C? On the entire sentencing package, yes, Your Honor. Throw out the mandatory life sentence for 1512. We ask the district court, what is the appropriate sentence given the circumstances of this case? There's no question that her murder is relevant conduct to the three underlying federal offenses. The district court was well within its discretion to determine... And your opponent attacks the use of the cross-reference to the murder guideline. I think the murder, as long as it's relevant conduct, the cross-reference is entirely appropriate for the guidelines and relevant conduct includes actions taken to avoid detection for the crimes. And there's just simply no question about that in this case. So we believe just her death warrants a life sentence. That's what we argued and that's what the district court found. Can I ask you a factual question about the other proceedings? Is everything now dismissed from the state courts? And is this all entirely federal with Higgins' vote as well as Schneider? Yes, Your Honor. It's not in the record how that developed. No, I don't care how it developed. One could find, though, dismissals and now Higgins' vote is facing federal charges as well. Yes, I believe his trial is set for September, Your Honor. Okay. Unless there are any questions, we would ask this court to affirm both the conviction and the sentence of Mr. Schneider. Okay. Anything further, Mr. Joshi? Very briefly, Your Honor, it's not legally relevant, but I do think it is interesting that Higgins' vote has been charged with robbery and brandishing and being a felon in possession. He has not been charged with killing a witness under 1512. The indictment just does not list that as a charge against him. He's going to trial not facing a murder charge, unlike Kelton Schneider, who was convicted of conspiracy. I just wanted to make three other very quick points. First on the statistics, that's right, it wasn't presented to the jury. We did present it in the Rule 29 motion below, but that's not about facts, right? The statistics about the frequency of the underlying crimes being federally prosecuted are about setting the legal threshold for the sufficiency of the evidence to meet. If the underlying crime were exclusively federal, if it were passport fraud, then one might think the legal standard to meet is quite low because they're all going to be federally prosecuted. But for a robbery, I think you need to show a little bit more and keep it moderate. Would it have been a bank robbery? A bank robbery, as we put in our submission, is much more likely to be federally prosecuted. But I will point out that Fowler involved a bank robbery. And nevertheless, not only did the Supreme Court vacate that conviction and send it back, the court below then vacated the conviction altogether. And that's the postscript of Fowler. The second thing I want to mention on sentencing is, I would urge the court, I take the court's skepticism on substantive reasonableness of a life sentence. Again, I'll just reiterate that. If the 1512 is gone, yes, the jury found a conspiracy to kill a witness, but it would still be someone not convicted of murder. And again, the question is, is he in the 20% of murderers in the federal system who get life sentences, or in the 80% who don't? And I would submit that, given some of the stuff in the record, especially with mental illness, especially his youth, especially the ability for him maybe to be released back into society when he's 60 or something like that, I think that's reason enough to vacate it. But in any event, if you agree with me on 1512, I would argue as a sentencing package, notwithstanding the district judge's word, I would still say, please, it would be a good idea to remand for resentencing. And then finally, on the cross-reference, I understand the relevant conduct point, but I also want to drive home the point that every crime in the guidelines book has its own cross-reference provision. And you have to apply the text of that provision. And so the question is relevant conduct for the felon in possession charge. And that requires that he either possess it or transfer it with intent that the gun be used later on. And there was no evidence to suggest that he transferred the gun after he and Paige Mars broke up on Saturday night. There's no evidence in the record, but the evidence that is there suggests that Higginsville actually took the guns immediately after the robbery. For those reasons, we ask for reversal. All right. Thank you very much. And we thank you as well for taking the appointment from the court. It's a great help to us. Thanks as well to the government. We'll take the case under advisement.